# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:12-CR-40-TLS |
| | ) | |
| RODRICK DEDEAUX | ) | |

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion to Suppress [ECF No. 33] filed on January 4, 2013. In his Motion, the Defendant alleges that his Fourth Amendment rights were violated when police officers performed a warrantless search of his residence that resulted in the seizure of narcotics and firearms, which led to his arrest. On March 21, an evidentiary hearing was held as to the Defendant's Motion. After a Transcript [ECF No. 43] of the evidentiary hearing was prepared and filed on May 23, the Defendant filed a Brief in Support [ECF No. 44] of his Motion to Suppress on May 31. In his post-hearing brief, the Defendant raises a new argument, asserting that his Fourth Amendment rights were violated when the Allen County Superior Court issued a search warrant for his residence because the affidavit "was not made under oath or affirmation and it was not otherwise sworn to by it[s] author." (Def.'s Br. in Supp 1, ECF No. 44.) In raising this new argument, the Defendant acknowledged that his pre-hearing brief presented a different theory for relief under the Fourth Amendment; specifically, "that after his house was initially swept by responding officers it was re-entered and searched without a warrant." (*Id.* 1 n.1.) The Defendant noted that he was no longer relying on this argument as the basis of his Motion to Suppress and did not address the issue in his post-hearing brief. (*Id.*) For the reasons that follow, the Court will deny the Defendant's Motion to Suppress.

## BACKGROUND

By way of an Indictment [ECF No. 1] filed on June 27, 2012, the Government charged the Defendant with two counts of criminal activity related to the distribution of narcotics. Count 1 charged the Defendant with knowingly and intentionally possessing with the intent to distribute a controlled substance, namely, less than 50 kilograms of marijuana, a Schedule I Controlled Substance, and less than 10 kilograms of hashish, a Schedule I Controlled Substance, in violation of 21 U.S.C. § 841(a)(1). Count 2 charged the Defendant with knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).

On January 4, 2013, the Defendant filed his Motion to Suppress. The Government filed its Response in Opposition [ECF No. 35] on January 18, and the Defendant filed his Reply [ECF No. 38] on January 31. On February 12, the Court entered an Order [ECF No. 39] scheduling an evidentiary hearing on the Defendant's Motion. On March 21, the Court conducted an evidentiary hearing on the Motion to Suppress. The Defendant was present and represented by attorney Thomas O'Malley. The Government was represented by Assistant United States Attorney Tina Nommay. The Court heard testimony from Fort Wayne Police Department (FWPD) Officer Matthew Foote, Officer David Colon, and Detective Marc DeShaies. Several exhibits were also admitted into the record. At the conclusion of the hearing, the Court took the Defendant's Motion under advisement and gave the parties additional time to file briefs. The Defendant filed his post-hearing brief on May 31. The Government filed its Response in Opposition [ECF No. 45] on June 19. The Defendant filed his Reply [ECF No. 46] on July 8.

## STATEMENT OF FACTS

Upon consideration of the credibility of the witnesses and the examination of the

evidence, the Court makes the following findings of fact.

**A.      Officer Matthew Foote's Testimony**

On May 10, 2012, around 1:30 AM, Officer Foote was dispatched to a residence on North Highlands Boulevard in Fort Wayne, Indiana, in response to a security alarm from the Defendant's residence. (Hr'g Tr. 7, ECF No. 43.) Officer Foote arrived at the scene after Officer Colon. (*Id.*) Upon Officer Foote's arrival, Officer Colon was in front of the Defendant's house. (*Id.*) According to the dispatch from emergency services, the security alarm was coming from a side door of the Defendant's residence. (*Id.* 7–8.) Officer Foote approached the south side of the residence and noticed the side door was ajar with damage to the molding around the door. (*Id.* 8.) Based on the appearance of the door, Officer Foote concluded that someone had forcibly entered the residence. (*Id.*)

After consulting with one another, Officers Foote and Colon decided to enter the residence. (*Id.*) Prior to entering, the officers announced their presence. (*Id.*) The alarm continued to sound audibly during this time. (*Id.*) Officer Foote entered the kitchen area and checked a door that led to the basement. (*Id.*) Officer Colon proceeded further into the residence and cleared the ground floor and upstairs. (*Id.* 8–9.) According to Officer Foote, the purpose of the sweep of the residence was to ascertain whether anyone was hiding inside the home and to make sure that no one was injured. (*Id.* 9.)

After opening the basement door, Officer Foote noticed "an overwhelming smell of raw marijuana." (*Id.* 9.) Based on his training at the law enforcement academy and his participation in multiple investigations involving marijuana, Officer Foote stated that he could tell the difference between burnt marijuana and raw marijuana. (*Id.* 9–10.) The officers announced their

presence prior to entering the basement. (Hr'g Tr. 11.) As they entered the basement, Officer

Foote walked towards a utility room, where he noted that the smell of marijuana was "absolutely

pungent." (*Id.*) In the utility room, Officer Foote described seeing rubber gloves in a T.V. box,

multiple three to five gallon sealed buckets, and several suitcases. (*Id.*) The smell of marijuana

got stronger as Officer Foote approached these items. (*Id.* 12.) Officer Foote noted that the word

"hash" was written on top of one of the buckets. (*Id.*) Based on his experience, Officer Foote

knew hash to be compressed marijuana. (*Id.*)

In addition to the evidence of marijuana, Officer Foote saw a revolver and a Glock on an

end table in the basement. (*Id.* 13.) He also observed marijuana shake, "particles" or "small

remnants" of marijuana on the end table with the firearms. (*Id.* 13–14.) Officer Foote then went

upstairs, called his supervisor, Sergeant DeJesus, and received permission to contact a narcotics

detective. (*Id.* 14.) Officer Foote contacted Detective Deshaies, a narcotic detective, by radio and

informed him of the situation at the residence, including the overwhelming odor of marijuana.

(*Id.* 14–15.) Detective Deshaies asked Officer Foote whether he saw any narcotics in plain view.

(*Id.* 15.) Officer Foote responded that he had not seen any narcotics in plain view. (*Id.*)

After about five minutes, Detective Deshaies arrived on the scene. (*Id.* 17.) At that time,

the officers involved were uncertain whether the alarm had recycled or continued to sound

without interruption. (*Id.*) Detective Deshaies indicated that he wanted to perform a secondary

sweep of the residence for safety purposes. (*Id.*) Officer Foote was concerned that the firearms

remained unsecured in the residence and that someone might still be in the house. (*Id.* 18.) The

two officers and Detective Deshaies performed a second sweep of the residence and confirmed

that no one was in the residence. (Hr'g Tr. 18.) The officers then went outside and secured the

perimeter of the residence while Detective Deshaies applied for a search warrant. (*Id.* 18–19.)

After Detective Deshaies returned with a search warrant, Officer Foote assisted in its execution along with other narcotics officers. (*Id.* 25.)

**B.     Officer David Colon's Testimony**

On May 10, 2012, Officer Colon was dispatched to a residence on North Highlands Boulevard in response to a security alarm. (*Id.* 71–72.) With Officer Foote, Officer Colon searched the perimeter of the house to see if there were any signs of forced entry. (*Id.* 72.) During their search of the perimeter, Officer Foote noticed that a side door to the residence was forced open. (*Id.* 73) Officer Colon observed signs of forced entry, and decided with Officer Foote to enter the house and perform a sweep of the residence. (*Id.*) Upon entry to the residence, the security alarm was still sounding. (*Id.*) Officer Colon completed a sweep of the residence separate from Officer Foote. (*Id.* 74.)

After completing the sweep of the ground floor and upstairs, the officers prepared to enter the basement from which they detected the odor of marijuana. (*Id.*) Officer Colon testified that he was able to identify the smell of marijuana from his training and investigatory experience. (*Id.* 74–75.) As he entered the basement, Officer Colon noted that the smell of marijuana grew stronger, particularly in the area of the basement with the washer and dryer. (*Id.* 75–76.) While in the basement, Officer Colon did not open or move any containers and did not find anyone in the basement. (*Id.* 76.) Officer Colon observed large suitcases and containers in the basement. (*Id.*) After sweeping the basement, the officers went outside and contacted Sergeant DeJesus to request permission to contact a vice and narcotics detective. (*Id.* 77.) Officer Foote then contacted Detective Deshaies; Officer Colon did not speak with Detective Deshaies before he arrived at the residence. (*Id.*)

Officer Colon testified that they reentered the residence "to show . . . Detective Deshaies what we had found and smelled." (Hr'g Tr. 77–79.) While in the residence, Officer Colon did not open any of the containers or move any of the suitcases in the basement. (*Id.* 79.) After they completed the second sweep of the residence, Officer Foote and Detective Deshaies left to apply for a search warrant. (*Id.* 80.) Officer Colon remained at the scene to make sure that no one entered the house. (*Id.*)

On cross-examination, Officer Colon corroborated Officer Foote's account of the initial sweep of the residence. (*Id.* 82–86.)

### C.     Detective Marc Deshaies's Testimony

On the night of May 10, 2012, Detective Deshaies was called to assist uniformed officers at North Highlands Boulevard. (*Id.* 95.) After receiving a request for a narcotics detective, Detective Deshaies spoke with Officer Foote and was informed that, in the course of investigating an audible security alarm, Officer Foote had discovered evidence of narcotics in the residence. (*Id.* 96.) According to Detective Deshaies, Officer Foote reported an overpowering smell of marijuana coming from the residence. (*Id.*) Detective Deshaies responded to the request for assistance and approached Officer Foote at the residence. (*Id.* 96–97.) Detective Deshaies observed that a side door was open as though it had been kicked in. (*Id.* 97.) At the time of his arrival, the alarm was audibly sounding. (*Id.*) Officer Foote indicated that the marijuana odor originated in the basement and that in a sweep of the basement, he had seen firearms and marijuana shake on a table and several large suitcases and food-grade buckets, which he believed were the source of the marijuana odor. (Hr' Tr. 97.) Standing at the threshold of the side door, Detective Deshaies was able to smell the odor of marijuana. (*Id.* 97–98.)

Based on Officer Foote's account of the situation, Detective Deshaies planned to obtain a search warrant but, with the alarm still sounding, was concerned that an individual could still be inside the residence with the unsecured handguns in the basement. (*Id.* 98.) To ensure that the home was completely secured, Detective Deshaies instructed Officers Foote and Colon to assist him in conducting a second sweep of the residence. (*Id.* 98–99.) All three men entered the residence and Detective Deshaies went downstairs with Officer Foote to secure the firearms in the basement. (*Id.* 99.) Detective Deshaies and Officer Foote did not open any containers while in the basement. (*Id.*) Detective Deshaies reiterated that "we were simply in there to ensure that there were no persons in [the residence] and to ensure that those weapons were not accessible to someone while we were maintaining security outside the home." (*Id.*) After completing the sweep, Detective Deshaies instructed the officers to secure all entrances to the house while he applied for a search warrant. (*Id.* 99–100.) Prior to leaving the scene, Detective Deshaies gave the law enforcement officers present "explicit instructions" not to reenter the residence until he obtained a search warrant. (*Id.* 100.)

As Detective Deshaies prepared to leave the scene, the Defendant's mother, Hazel Lawson, arrived at the residence. (*Id.* 101.) Lawson identified herself as a representative for the house and the homeowner's mother and informed Detective Deshaies that she had been contacted due to the alarm being triggered. (*Id.*) According to Lawson, the Defendant was out of town at the time. (*Id.*) When Lawson arrived, she was talking on the phone to her son, the Defendant. (Hr'g Tr. 101–02.) Detective Deshaies asked Lawson if he had permission to search the home. (*Id.* 102.) Lawson explained that she did not have authority to consent to such a search but offered to have Detective Deshaies speak to her son, the Defendant, Rodrick Dedeaux. (*Id.*) The Defendant inquired if everything at the house was okay. (*Id.*) Detective Deshaies explained

why he was there and that the house appeared to have been broken into. (*Id.*) He then requested permission from the Defendant to search the home. (*Id.*) The Defendant denied Detective Deshaies's request and stated that, if no one was in the house, he would prefer if the police left. (*Id.*) Detective Deshaies then informed the Defendant that the police officers present could not leave and that he would be applying for a search warrant to the Defendant's residence. (*Id.* 102–03.)

After speaking with Lawson and the Defendant, Detective Deshaies returned to his office, contacted the on-duty narcotics prosecutor, drafted a search warrant and affidavit, and faxed the search warrant application to an Allen County Superior Court judge. (*Id.* 103.) The judge found probable cause and returned a signed search warrant to Detective Deshaies. (*Id.*) Law enforcement officers cleared the residence again and then conducted a search of the residence. (*Id.* 104.) From the suitcases in the basement, officers recovered 52.2 pounds of marijuana. (*Id.* 108.) The buckets in the basement contained approximately 22.2 pound of marijuana. (*Id.*) One of the suitcases contained compressed hashish that weighed approximately 7.2 pounds. (*Id.*) One of the buckets also contained hashish weighing just under two pounds. (*Id.*) When removed from their containers, Detective Deshaies noted the smell of marijuana was overwhelming, consistent with potent, high grade marijuana. (*Id.* 108–09.)

On cross-examination, counsel for the Defendant questioned Detective Deshaies regarding his application for a search warrant. Detective Deshaies confirmed that he prepared the search warrant application. (Hr'g Tr. 127.) After reviewing the search warrant application, Detective Deshaies initially stated that he made the affidavit under oath. (*Id.* 128.) Detective Deshaies explained that he was not present when the magistrate judge considered the search warrant because the deputy prosecutor faxed the application to the magistrate. (*Id.*) Counsel for

the Defendant then questioned Detective Deshaies regarding who swore him in:

| | |
|---|---|
| Counsel: | [The affidavit] says that it was subscribed and sworn this 10th day of May, 2012, do you see that, sir? |
| Detective: | Yes, sir. |
| Counsel: | And that was who – who swore you in? |
| Detective: | I completed the affidavit in front of Deputy Prosecutor Karcher. |
| Counsel: | Did you raise your right hand and take an oath? |
| Detective: | No, sir. |
| Counsel: | Did anybody say to you, "Do you swear and affirm that this affidavit has – is made under the pains and penalties of perjury"? |
| Detective: | No, sir. |
| Counsel: | So nobody put you under oath, and you were not sworn in, is that correct? |
| Detective: | Yes, sir. |
| Counsel: | All right. You signed the affidavit, sir? |
| Defendant: | Yes, sir. |
| Counsel: | Okay. And then your testimony was faxed, is that correct? |
| Defendant: | Yes, sir. |

(Hr'g Tr. 128–29.)


## ANALYSIS

The Defendant argues that the search warrant in this case violated his Fourth Amendment rights because it was not issued upon probable caused supported by oath or affirmation. (Def.'s Br. in Supp. 9.) In support of this argument, the Defendant reviews the language of the affidavit

and compares that language with Detective Deshaies's testimony at the suppression hearing. (*Id.*) The Defendant emphasizes that Detective Deshaies's admitted that he was not sworn in and did not take an oath or affirmation at any point prior to submitting the probable cause affidavit. (*Id.*) Absent an oath or affirmation, the Defendant contends that "[t]here was no added incentive for Deshaies to tell the truth." (*Id.* 10 (citing *United States v. Brooks*, 285 F.3d 1102, 1105–06 (8th Cir. 2002).) To develop his argument, the Defendant quotes the formal definition of "affirmation," "oath," "swear," and "affidavit" from Black's Law Dictionary and other comparable sources. (Def.'s Br. in Supp. 10–11.) The Defendant then discusses the Seventh Circuit's decision in *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985), in which the court of appeals considered the validity of unsworn affidavits in civil cases in the context of 28 U.S.C. § 1746. (Def.'s Br. in Supp. 12.) In the Defendant's view, the unsworn affidavit in this case does not satisfy even *Pfeil*'s "relaxed" standard. (*Id.*) Finally, the Defendant quotes *Lamberti v. United States*, 22 F. Supp. 2d 60, 71 (S.D.N.Y. 1998), in which the district court concluded "[a]n unsworn declaration not made under penalty of perjury nor stating the document is true is not an affidavit." (Def.'s Br. in Supp. 13.) Comparing the affidavit in this case to that in *Lamberti*, the Defendant asserts that "Deshaies affidavit is not an affidavit at all. It is not sworn, it is not under oath, it is not under affirmation, and it is not a declaration made under the penalties of perjury and it does not state the facts are true and correct." (*Id.*)

In response, the Government challenges the premise of the Defendant's argument. First, the Government argues that the explicit language of the search warrant affidavit supports a finding that Detective Deshaies swore to the truth of the facts contained in the affidavit. (Govt.'s Resp. in Opp'n 13.) Second, in the alternative, the Government maintains that, even if the warrant was unsworn, the good faith exception should apply in this case. (*Id.* 14.) In support of

its position, the Government cites to a case previously before this Court, *United States v. John Edward Scott*, Cause Number 1:09-CR-98, in which the Court rejected a defendant's similar argument regarding an unsworn affidavit. (*Id.*) Further, the Government cites a number of cases in which courts have applied the good faith exception where judicial officers or prosecutors have inadvertently failed to administer an oath to a law enforcement agent prior to the issuance of a search warrant. (*Id.* 17.)

In reply, the Defendant reiterates that the Fourth Amendment requires that a warrant be supported by oath or affirmation and emphasizes that no such oath or affirmation was administered here. (Def.'s Reply 6, ECF No. 46.) Next, the Defendant distinguishes the present case from the *John Edward Scott* case relied upon by the Government in its Response:

> In *Scott's* case[,] the entire issue was whether the language of the affidavit was sufficient to demonstrate whether an oath or affidavit had been made by the officers prior to obtaining a search warrant. [In this case], it is uncontested that Officer Deshaies was not put under oath nor was he sworn in prior to making his affidavit. . . . Dedeaux is not arguing that the word of the affidavit is not sufficient; Dedeaux is relying on, Deshaies sworn testimony that he was not put under oath or otherwise sworn as required by the Fourth Amendment.

(*Id.*) In response to the Government's argument that the good faith exception should apply, the Defendant emphasizes that the good faith exception applies only "when a police officer relies in <u>objective</u> good faith on a faulty but facially valid search warrant." (*Id.* 12 (citing *United States v. Leon*, 468 U.S. 897, 916 (1984) and *United States v. Dickerson*, 975 F.2d 1245, 1249 (7th Cir. 1992)).) The Defendant argues that Detective Deshaies is expected to have knowledge of well-established legal principles and that, by his own admission, Detective Deshaies was aware that he had not been sworn in prior to the submission of the probable cause affidavit. (Def.'s Reply 12–13.) According to the Defendant, the affidavit in question was plainly deficient and prepared in reckless disregard of the truth. (*Id.* 13–15.) Therefore, the Defendant concludes that the

11

application of the good faith exception is unwarranted in this case. (*Id.* 15.)

## A.     The Fourth Amendment's Oath or Affirmation Requirement Was Satisfied

The Fourth Amendment states in relevant part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Although "courts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner," *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (alterations omitted) (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)), "[t]he oath requirement is no technical or trivial component of the Warrant Clause of the Fourth Amendment," *United States v. Chapman*, 954 F.2d 1352, 1370 (7th Cir. 1992). "An oath is a matter of substance, not form, and it is an essential component of the Fourth Amendment and legal proceedings." Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 4.3(e) (5th ed.) (quoting *State v. Tye*, 636 N.W.2d 473 (2001)). *See also Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (affirming that warrants must meet the requirements of the Warrant Clause, and be based upon probable cause, supported by oath or affirmation); *but see Dalia v. United States*, 441 U.S. 238, 255 (1979) ("The Fourth Amendment requires that search warrants be issued only upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. Finding these words to be precise and clear, *this Court has interpreted them to require only three things*. First, warrants must be issued by neutral, disinterested magistrates. Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense. Finally, warrants must particularly describe the things to be

seized, as well as the place to be searched." (emphasis added) (internal citations and quotations omitted)). "An oath or affirmation 'is designed to ensure that the truth will be told by insuring that the witness or affiant will be impressed with the solemnity and importance of his words.'" *United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) (quoting *United States v. Turner*, 558 F.2d 46, 50 (2d Cir. 1977)). "[W]here a warrant is issued unsupported by oath or affirmation, it is invalid under the Fourth Amendment." *United States v. Vargas-Amaya*, 389 F.3d 901, 904 (9th Cir. 2004) (citing *United States v. Rabe*, 848 F.2d 994, 997 (9th Cir. 1988) (explaining that the Warrant Clause "requires the government to establish by sworn evidence presented to a magistrate that probable cause exists to believe that an offense has been committed")).

Here, it is undisputed that Detective Deshaies was not orally sworn in before preparing and submitting the search warrant application for the Defendant's residence. The Government relies on *United States v. Scott*, Cause No. 1:09–CR–98–TLS, 2010 WL 5058544 (N.D. Ind. Dec. 6, 2010) (Springmann, J.), to support its argument that the written affidavit nonetheless complies with the oath and affirmation requirement of the Fourth Amendment. The Defendant disputes the relevance of *Scott* to the instant case, arguing that, unlike in *Scott*, Detective Deshaies has conceded that he was not put under oath or sworn in prior to preparing the probable cause affidavit.

In *Scott*, law enforcement agents obtained a search warrant for the defendant's residence, and the execution of that search warrant led to the discovery of evidence related to drug trafficking. 2010 WL 5058544, at *1. The Court explained the factual background related to the search warrant:

On August 26, 2009, Allen County Police Department (ACPD) Detective Jack Cain,

Deputy Prosecuting Attorney Jeffrey A. Stineburg, and Allen Superior Court Judge Kenneth R. Scheibenberger signed the Search Warrant Affidavit at issue in this case. The Affidavit has a typical affidavit caption that identifies the State of Indiana and the County of Allen, indicates the relationship of the Affidavit to a particular investigation (09V–42), and styles the document "Search Warrant Affidavit." The Affidavit then includes six paragraphs of facts and a seventh paragraph requesting a search warrant. Detective Cain's signature appears after these seven paragraphs, toward the end of the Affidavit. Directly under Detective Cain's signature is his printed name and an identification of him as the Affiant. His signature and printed name appear at the bottom of the second page, but immediately above the jurat, which appears at the top of the third page. The jurat states, "Subscribed and sworn to me this 26th day of August, 2009", and includes the signatures of Attorney Stineburg and Judge Scheibenberger; the printed name, bar number, business address, and business telephone number of Attorney Stineburg; and the identification of Judge Scheibenberger as a Judge of the Allen Superior Court.

The first paragraph of the Affidavit states:

> Detective Jack Cain of the Allen County Police Department swears that he believes and has Probable Cause to believe that certain evidence of drug activity including Heroin and derivatives thereof, controlled substances, United States Currency, firearms and/or weapons, records of drug transactions and/or financial information, which constitutes evidence of alleged drug transactions and illegal possession of said controlled substances, are concealed on or about the following property, to wit: [providing a detailed description of the Heritage Drive residence including a physical description of the building and the street address].

The first sentence of the second paragraph of the Affidavit states: "In support of your affiant's assertion of Probable Cause, the following facts are within your affiant's personal knowledge, to wit."

*Id.* at *2–3 (internal citations omitted). The Court then summarized the body of the affidavit,

which described the factual basis for Detective Cain's request for a search warrant. *Id.* at *3–4.

At the conclusion of its summary, the Court noted:

> On August 26, 2009, Judge Scheibenberger signed and issued the Search Warrant. The Search Warrant begins by stating: "WHEREAS an Affidavit has been filed with me (and/or sworn testimony has been heard by me) that established Probable Cause." The Search Warrant authorized a search of the Heritage Drive address for evidence of drug activity and seizure of property found during the search.

*Id.* at *4 (internal citation omitted).

> After laying out these facts, the Court considered the defendant's arguments:

> The Court must determine whether the Search Warrant Affidavit was invalid. The Defendant claims that it was not made upon oath or under penalties of perjury, did not show that Detective Cain was testifying to the truth of the matters contained therein or that he had personal knowledge of the contents of the Affidavit, and lacked a jurat. He contends that the Fourth Amendment mandates that a warrant be made pursuant to an oath or affirmation, that swearing is not enough to meet the floor requirements of the Fourth Amendment, that the Affidavit is deficient, that the Search Warrant was not properly supported, and consequently that all of the evidence obtained pursuant to the warrant should be suppressed.

*Id.* The Court reviewed the definitions of "oath," "affirmation," and "sworn" or "swear" using

*Black's Law Dictionary*. *Id.* at *5. Next, the Court turned to the Eighth Circuit's decision in

*United States v. Brooks*, 285 F.3d 1102 (8th Cir. 2002), and the Seventh Circuit's decision in

*Pfeil v. Rogers*, 757 F.2d 850 (7th Cir. 1985), which both discussed the Fourth Amendment's

oath or affirmation requirement at length. *Scott*, 2010 WL 5058544, at *5–6. Acknowledging

that "the Affidavit in this case does not explicitly reference God in a formal oath, expressly

mention penalties of perjury, or directly state that Detective Cain believed the stated facts to be

true," the Court nonetheless reasoned that the search warrant affidavit was valid and satisfied the

Fourth Amendment's oath and affirmation requirement:

> In this case, the statement of Detective Cain was drafted and submitted in the form of a written and verified Affidavit. *Cf. United States v. Wilson*, 169 F.3d 418, 424 (7th Cir. 1999) (stating that "the preferred practice counsels that the issuing judge require that the informants' statements be reduced to writing and verified"). After the formal caption, the Affidavit began by stating that Detective Cain "swears" that he has probable cause to believe that evidence of illegal drug activity is concealed at a particular residence. *See Brooks*, 285 F.3d at 1105 (finding that "the language that [the officer] used in the documents, especially the repeated recitations that he was 'duly sworn,' quite obviously reflects his intention to be under oath"). . . . At the beginning of the second paragraph, Detective Cain attested that the facts set forth in the paragraphs that followed in the Affidavit were within his personal knowledge, which, when coupled with his swearing to the statements, implies that he believed those facts to be true. . . . The Affidavit concluded with Detective Cain's request for

a search warrant and his signature, which was accompanied by his printed name and
an identification of the detective as affiant.

*Scott*, 2010 WL 5058544, at *6. The Court then cited additional evidence in supports of its

conclusion that Detective Cain complied with the Fourth Amendment's oath and affirmation

requirement:

> On the top of the third page, but immediately after the detective's signature block,
> is the jurat and the signatures of Deputy Prosecuting Attorney and Allen Superior
> Court Judge Scheibenberger. In the jurat, the deputy prosecuting attorney and the
> judge certified that Detective Cain had appeared before them on August 26, 2006,
> that Detective Cain had signed the Affidavit in front of them, and that an oath or
> affirmation was administered to Detective Cain. This certification is then reiterated
> in the Search Warrant signed and issued by Judge Scheibenberger on the same date,
> which began with the following statement: "WHEREAS an Affidavit has been filed
> with me (and/or sworn testimony has been heard by me) that established Probable
> Cause." (Search Warrant 1.) On their face, the Affidavit and the Search Warrant are
> consistent with a police detective formally undertaking to tell the truth by signing a
> statement of facts under oath before a neutral magistrate as part of an application for
> a search warrant.

*Id.*

The Court agrees with the Defendant that the present case is factually distinct from *Scott*.

In *Scott*, the defendant argued that the probable cause affidavit was "insufficient as a matter of

law because it [did] not show that the Affiant was under oath" or "that the Affiant was testifying

to the truth of the matters contained therein." *Id.* at *2. Here, in contrast, the Defendant argues

that there is no factual uncertainty for the Court to resolve because Detective Deshaies conceded

that he was not sworn in prior to preparing and signing the affidavit. The Defendant's position is

partially correct. Detective Deshaies admitted that he did not *orally* take an oath or *orally* swear

to the truth of the contents of the affidavit. But, the *written* affidavit prepared by Detective

Deshaies evidenced an intent to be under oath, and in so doing, complied with the Fourth

Amendment.

The affidavit in this case is similar to that in *Scott*. As in *Scott*, the affidavit has a typical affidavit caption that identifies the State of Indiana and the County of Allen, indicates the relationship of the affidavit to a particular investigation, and styles the document "SEARCH WARRANT AFFIDAVIT." (Search Warrant Aff. 1, Def.'s Ex. C.) The first sentence of the affidavit states:

> Officer M Deshaies FWPD 1786F, of the Fort Wayne Police Department *swears* that he believes and has Probable Cause to believe that certain evidence of drug activity including Marijuana and controlled substances and derivatives thereof, firearms, U.S. currency, and records of drug transactions and other financial information related to drug trafficking, on or about the following building: providing the street address in Fort Wayne, Allen County, Indiana.

(*Id.* (emphasis added).) The next five paragraphs describe the factual basis for Detective Deshaies' request for a search warrant. (*Id.* 1–2.) The last two paragraphs of the affidavit state:

> Your *Affiant* believes said building may contain evidence of the aforementioned offenses.
> Wherefore, your *Affiant* respectfully requests the Court to issue a search warrant directing the search for and seizure of evidence of drug activity including: Mariajuana and controlled substance and derivatives thereof, firearms, U.S. currency, and records of drug transaction and other financial information related to drug trafficking, concealed in or about the above described building.

(*Id.* 2 (emphasis added).) Below Detective Deshaies signature and above the Deputy Prosecuting Attorney's and Allen County Superior Court judge's signatures, the affidavit includes the following, "Subscribed and *sworn to* before me this the 10th day of May, 2012." (*Id.* (emphasis added).) The first sentence of the Search Warrant signed by the Allen County judge states, "WHEREAS, an affidavit has been filed with me (and/or sworn testimony has been heard by me) that establishes Probable Cause." (Search Warrant, Def.'s Ex. B.)

"[A] person may be under oath even though that person has not formally taken an oath by raising a hand and reciting formulaic words," *Brooks*, 285 F.3d at 1106, and a law enforcement

17

officer "who manifests an intention to be under oath is in fact under oath," *id.* at 1105 (collecting cases). The same factors that the Court cited in its Opinion and Order in *Scott* to support its finding that law enforcement officers had complied with the Fourth Amendment's oath or affirmation requirement are present in this case. As in *Scott*, Detective Deshaies explicitly swore to the truth of his statements in the affidavit in its opening line. As in *Scott*, Detective Deshaies referred to himself on multiple occasions as an "Affiant."[1] As in *Scott*, immediately below Detective Deshaies's signature is a statement of the sworn nature of the contents of the affidavit. In the Court's view, these statements are sufficient indicia of Detective Deshaies's intent to be under oath when he prepared and signed the affidavit.

In *Brooks*, the Eighth Circuit rejected a defendant's argument that a police officer was not under oath at the time he signed a warrant application and supporting affidavit:

> We agree with the district court that the language that Officer Graves used in the documents, especially the repeated recitations that he was "duly sworn," quite obviously reflects his intention to be under oath. His conduct was also consistent with that intention: He took the documents to an individual authorized to administer oaths and signed them before that individual, and he presented to a judge for signature a warrant that acknowledged that the warrant application was "duly verified by oath or affirmation." . . . [W]e conclude that there was sufficient evidence to support the district court's finding that Officer Graves intended to be under oath.

285 F.3d at 1105. *See also United States v. Fredericks*, 273 F. Supp. 2d 1032, 1037–38 (D.N.D. 2003) ("The Court finds that, under the circumstances, Officer Standish's 'Affidavit for Search Warrant' satisfied the oath or affirmation requirement and that the search warrant was not issued in violation of the Fourth Amendment. . . . The nature of the document as well as Officer Standish's attendant conduct indicates that Officer Standish realized that he was swearing to the

---

[1] An affiant is "[o]ne who makes an affidavit," and an affidavit is "[a] voluntary declaration of facts written down and *sworn to* by the declarant before an officer authorized to administer oaths." *Black's Law Dictionary* (9th ed. 2009) (emphasis added).

truth of what he said. Officer Standish's recitation that he was 'duly sworn' reflects his intention to be under oath. Officer Standish's conduct was also consistent with this intention as he took the document to a tribal court judge and signed it in her presence. As it is apparent that Officer Standish had manifested an intent to be under oath, as such, he can be considered to be under oath for Fourth Amendment purposes.").

Here, Detective Deshaies's actions demonstrated a similar intent to be under oath. His written affidavit included statements swearing to the truth of its contents and repeatedly referred to himself as an "affiant." Detective Deshaies's conduct was similar to that of the police officer in *Brooks*—Detective Deshaies prepared the affidavit with the assistance of a deputy prosecutor and presented it to an Allen County Superior Court Judge for signature and approval. The plain language of the affidavit and Detective Deshaies's conduct support a finding that Detective Deshaies intended to be under oath at the time of the affidavit's preparation and execution.

**B.       In the Alternative, the Good Faith Exception to the Exclusionary Rule Applies**

Assuming *arguendo* that Detective Deshaies was not under oath, the Court must consider whether the exclusionary rule applies in this case. Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347 (1974) (citing *Mapp v. Ohio*, 367 U.S. 643 (1961); *Weeks v. United States*, 232 U.S. 383 (1914)). The purpose of the exclusionary rule is to deter future Fourth Amendment violations, *Herring v. United States*, 555 U.S. 135, 141 (2009) (citing *Calandra*, 414 U.S. at 347–55), and to apply the exclusionary rule, "the benefits of deterrence must outweigh the costs," *Herring*, 555 U.S. at 141

(citing *United States v. Leon*, 468 U.S. 897, 910 (1984)). Because of its "substantial social costs," the exclusionary rule should be a court's "last resort" and not its "first impulse." *Herring,* 555 U.S. at 140–41 (quotation marks omitted).

In *Leon*, the Supreme Court held that the exclusionary rule does not apply when the law enforcement officers conduct a search in "objectively reasonable reliance" on a warrant later held invalid. 468 U.S. at 922. However, a defendant can defeat the good faith exception to the exclusionary rule by showing (1) that the affiant was dishonest or reckless in preparing the affidavit; (2) that the issuing judge abandoned the detached and neutral judicial role; (3) that the warrant was so lacking in probable cause that the officer could not reasonably rely on the judge's issuance of it; or (4) the warrant was so facially deficient that the executing officers could not reasonably believe it to be valid. *Id.* at 923.

Courts have routinely applied the good faith exception in cases where a search warrant affidavit was unsworn. *See, e.g.*, *United States v. Hessman*, 369 F.3d 1016, 1022–23 (8th Cir. 2004) (finding that law enforcement officers' reliance on an unsworn and unsigned search warrant was not objectively unreasonable and applying *Leon*'s good faith exception); *United States v. Callwood*, 66 F.3d 1110, 1113 (10th Cir. 1995) (ruling the exclusion of evidence is not "the appropriate remedy" for the issuing magistrate judge's failure to administer an oath to an officer, referring to *Leon*); *United States v. Kurt*, 986 F.2d 309, 311 (9th Cir. 1993) (applying the good faith exception where a judge instructed a detective to change an address on the warrant without administering an oath); *United States v. Moore*, 968 F.2d 216, 223 (2d Cir. 1992) (holding "the lack of an oath or affirmation by the presiding officer did not destroy the warrant's final validity," and applying *Leon*); *United States v. Richardson*, 943 F.2d 547, 548, 550–51 (5th Cir. 1991) (applying *Leon* and reversing the district court's decision to suppress where law

enforcement officer had not signed the affidavit and the magistrate judge did not require an oath or affirmation of the facts in the affidavit); *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988) (rejecting a claim that a warrant was invalid because government agents applying for the warrant were not placed under oath or formally sworn and applying the good faith exception); *United States v. McMillian*, No. 11–CR–193, 2012 WL 273735, at *12 (E.D.Wis. Jan. 27, 2012) (considering *Kurt*, *Richarson*, and *Matias*, and finding that "[e]ven if the judge's failure to place Detective Gomez under oath violated the Fourth Amendment, the error was the judge's, not the detective's. Consequently, the good faith exception applies."). In *Matias*, an Assistant United States Attorney (AUSA) applied telephonically for a search warrant. 836 F.2d at 747. During the telephonic presentation to a magistrate, the investigating agent was one the line with the AUSA, but neither the AUSA nor the investigating agent was placed under oath or formally sworn. *Id.* The Second Circuit rejected the defendant's suppression argument and applied *Leon*'s good faith exception, concluding that "[b]ecause the failure to put the agent formally under oath was obviously an oversight, the agents' reliance on the facially valid warrant was clearly reasonable under the circumstances." *Id.*

Similarly, in *Richardson*, the Fifth Circuit considered a district court's decision to suppress evidence uncovered during the execution of a search warrant supported by an unsigned and unsworn affidavit. Agreeing with the district court's finding that the affidavit was not signed and did not satisfy the Fourth Amendment's oath or affirmation requirement, the court turned to the issue of suppression. *Richardson*, 943 F.2d at 549–50. The court then reviewed the deterrent purpose of the exclusionary rule and the policy underlying *Leon*'s good faith exception. *Id.* at 550. The court found that the magistrate did not abandon his neutral and detached role, and that the affiant was not dishonest or reckless in preparing the affidavit. *Id.* Further, the court

concluded, the warrant was not lacking in probable cause and was not facially deficient. *Id.* In the court's view, "the magistrate's failure to administer the oath was inadvertent; it clearly was not a departure from his neutral and detached role." *Id.* The court explained that deterrence was not served by punishing law enforcement officers for the mistakes of judges because "[t]he rare occasion when a magistrate accidentally fails to administer an oath cannot be eliminated by suppressing the evidence in that situation." *Id.* at 551(citing *Leon*, 468 U.S. at 906). Finding it unlikely that law enforcement officers would attempt to evade the oath or affirmation requirement, the court noted that "[o]fficers cannot realistically hope to escape the oath or affirmation requirement either through an outright refusal to swear or through 'magistrate shopping.'" *Richardson*, 943 F.2d at 551. In conclusion, the court stated:

> suppressing the evidence seized in the case will add nothing to protect against an affiant who misrepresents the facts to the magistrate, nor will it encourage officers to take their chances in submitting deliberately or recklessly false information, for they will expect to be sworn when preparing their warrant applications.

*Id.*

Finally, in *Hessman*, a deputy sheriff prepared an unsigned and unsworn application for a search warrant and faxed it to a state magistrate. 369 F.3d at 1018. The magistrate signed the warrant and faxed it back to the deputy. *Id.* The district court found that the deputy failed to sign the application, and that the magistrate did not place the deputy under oath prior to signing the warrant and returning it to the deputy. *Id.* After an evidentiary hearing, the district court concluded that the deputy "could not have reasonably relied on the search warrant because he was aware that the warrant had not been sworn or attested when it was executed." *Id.* at 1019. The Eight Circuit disagreed with the district court's analysis and applied *Leon*'s good faith exception. Considering the purpose of the exclusionary rule and the rationale underlying *Leon*'s

good faith exception, *id.* at 1020–21, the court reviewed decisions of its sister circuits in similar circumstances, *id.* at 1021–22 (citing *Callwood*, 66 F.3d at 1113; *Kurt*, 986 F.3d at 311; *Moore*, 968 F.2d at 223; *Richardson*, 943 F.2d at 550–51; *Matias*, 936 F.2d at 747). In light of these decisions and *Leon*, the court found:

> the evidence against Hessman should not have been suppressed. If the Second, Fifth, Ninth, and Tenth Circuits would probably find the Hessman warrant valid, it is difficult to say Deputy Suhr's conduct in honoring the warrant was objectively unreasonable. The error in this case belonged to the issuing magistrate. Deputy Suhr did not attempt to avoid swearing a formal oath. Applying the exclusionary rule here would not serve a deterrent purpose, because "[t]he rare occasion when a magistrate accidently fails to administer an oath cannot be eliminated by suppressing the evidence in that situation." *Richardson*, 943 F.2d at 551.

*Hessman*, 369 F.3d at 1022. Continuing, the court noted that the deputy was in contact with the magistrate throughout the search warrant application process and was available to be sworn in at the magistrate's request. *Id.* at 1023. Further, the court emphasized, the district court found no evidence that the deputy acted in bad faith or intentionally avoided the oath or affirmation requirement. *Id.* The court concluded that the deputy's reliance on the warrant issued by the magistrate was "objectively reasonable" because (1) the state magistrate made a probable cause determination; (2) the affidavit satisfied the Fourth Amendment's particularity requirement; (3) the affiant helped execute the warrant; and (4) the warrant could have been validated by the deputy's signature and the administration of an oath. *Id.* (citing *United States v. Shugart*, 117 F.3d 838, 845–46 (5th Cir. 1997).

Here, the Court finds that even if Detective Deshaies and the state judge failed to comply with the Fourth Amendment's oath or affirmation requirement, the good faith exception would apply. "An officer's decision to obtain a search warrant is prima facie evidence of the officer's good faith." *United States v. Schubert*, — F. App'x —, 2013 WL 3224582, at *4 (7th Cir. June

26, 2013) (citing *United States v. Miller*, 673 F.3d 688, 693 (7th Cir. 2012)). Consulting "with

the prosecutor prior to applying for [a] search warrant provides additional evidence of [that

officer's] objective good faith." *United States v. Pappas*, 592 F.3d 799, 802 (7th Cir. 2010)

(citing *United States v. Bynum*, 293 F.3d 192, 198 (4th Cir. 2002)). Law enforcement officers

should not be punished for the errors of judges, *Leon*, 468 U.S. at 916, and, any error in this case

belonged to the issuing judge not Detective Deshaies. *See Hessman*, 369 F.3d at 1022 (failure to

administer an oath is the fault of the issuing judge or magistrate, not the law enforcement

officer); *Callwood*, 66 F.3d at 1113 (same); *McMillian*, 2012 WL 273735, at \*12 (same). The

evidence here shows that Detective Deshaies acted in good faith and did not attempt to evade the

Fourth Amendment's oath or affirmation requirement. Detective Deshaies prepared the affidavit

with the assistance of a deputy prosecuting attorney and the affidavit contained language

indicating an intent to be under oath. He then faxed the affidavit to the Allen County judge who

reviewed, signed, and issued the search warrant. Had the issuing judge requested that Detective

Deshaies be sworn in, Detective Deshaies was available to do so. When questioned as to whether

the he sworn in before preparing and signing the affidavit, Detective Deshaies readily admitted

that he was not. On the record before the Court, it appears that any failure to comply with the

oath or affirmation requirement was an inadvertent mistake, and "[t]he rare occasion when a

magistrate accidentally fails to administer an oath cannot be eliminated by suppressing the

evidence in that situation." *Richardson*, 942 F.2d at 551(citing *Leon*, 468 U.S. at 906).

Ultimately, officers' reliance on the affidavit in conducting a search of the Defendant's residence

was objectively reasonable because 1) the state judge made a probable cause determination; (2)

the affidavit satisfied the Fourth Amendment's particularity requirement; (3) Detective Deshaies

helped execute the warrant; and (4) the warrant could have been validated by the administration

of an oath. *See Hessman*, 369 F.3d at 1023 (citing *Shugart*, 117 F.3d at 845–46). Therefore, the Court concludes that suppression is inappropriate in this case.

**C.     The Exceptions to *Leon*'s Good Faith Rule Are Inapplicable**

Nonetheless, the Defendant contends that the application of the good faith exception is inappropriate for two reasons. First, the Defendant argues that the search warrant was so facially deficient that the executing officers could not reasonably believe it to be valid. (Def.'s Reply Br. 12–13.) In the Defendant's view, Detective Deshaies knew that a search warrant could only be issued upon probable cause supported by oath or affirmation and that, in this case, he did not make any such oath or affirmation. (*Id.*) Therefore, the Defendant concludes that Detective Deshaies could not have objectively relied on the facial validity of the warrant. (*Id.* 13.) Second, the Defendant argues that the good faith exception should not apply because Detective Deshaies was dishonest or reckless in preparing the affidavit. (*Id.* 3–6, 13–15.) The Court addresses each of these arguments in turn.

1.      *The Affidavit Was Not So Facially Deficient That No Reasonable Officer Could Have Relied Upon It.*

The good faith exception to the exclusionary rule does not apply if a defendant demonstrates that "'[a] supporting affidavit is so facially deficient that no reasonable officer could have relied upon it.'" *United States v. Carmel*, 548 F.3d 571, 576 (7th Cir. 2008) (quoting *United States v. Watts*, 535 F.3d 650, 657 (7th Cir. 2008) (citing *Leon*, 468 U.S. at 922–23)). Here, the Defendant argues that the warrant was facially deficient because Detective Deshaies knew that he had not taken an oath or affirmation prior to preparing and signing the affidavit.

The Court finds this argument unavailing for several reasons. First, *Leon* tells us that a warrant is "so facially deficient" that no reasonable officer could rely on it if the warrants "fail[s] to particularize the pace to be searched or the things to be seized." *Schubert*, — F. App'x —, 2013 WL 3224582, at *4. *See also Hessman*, 369 F.3d at 1023 (citing *Leon*, 468 U.S. at 923) (rejecting the argument that an unsigned and unsworn affidavit was so facially deficient that no reasonable officer could rely on it because the warrant identified with particularity the place to be searched and the things to be seized). Here, the search warrant particularly described the place to be searched (the Defendant's residence at a specific street address on Northhighlands Blvd, Fort Wayne, Allen County Indiana)[2] and the things to be seized (evidence including marijuana and controlled substances and derivates thereof, firearms, U.S. currency, and records of drug transactions and other financial information related to drug trafficking). (Search Warrant, Def.'s Ex. B.)

Second, in *Moore*, the Second Circuit considered the four exceptions to the good faith rule set forth in *Leon* where a search warrant was unsupported by oath or affirmation. 968 F.2d at 222–23. The court reasoned that "the lack of an oath or affirmation by the presenting officer did not destroy the warrant's facial validity." *Id.* at 223 (citing *Matias*, 836 F.2d at 747). In *Matias*, the court found that "the failure to put the agent under oath was an obvious oversight, and, therefore, the agent reasonably relied on a facially valid warrant." *Moore*, 968 F.2d at 223 (citing *Matias*, 836 F.2d at 747). Because the district court found that the failure to place the presenting officer under oath was an oversight, it did not prevent the application of the good faith exception. *Moore*, 968 F.2d at 223. In other words, an otherwise facially valid warrant is not rendered

---

[2]The search warrant included a detailed physical description of the Defendant's residence. (Search Warrant, Def.'s Ex. B.)

deficient if it is unsupported by oath or affirmation. Here, the Defendant does not contend that the search warrant was invalid for want of probable cause or otherwise facially deficient. Consequently, the lack of an oath or affirmation does not prevent the application of the good faith exception in this instance.

2.    *The Defendant Has Failed to Present Sufficient Evidence Establishing That Detective Deshaies Was Dishonest or Reckless in Preparing the Affidavit.*

The good faith rule set forth in *Leon* does not apply if a defendant shows that the affiant was dishonest or reckless in preparing the affidavit. *Leon*, 468 U.S. at 923; *Miller*, 673 F.3d at 693. Here, the Defendant argues that Detective Deshaies was dishonest and reckless when he prepared the affidavit and omitted the fact that he entered the Defendant's residence "prior to obtaining the search warrant but after Colon and Foote had already walked through the house and were sure that the house was cleared." (Def.'s Reply Br. 14.) The Defendant identifies numerous perceived discrepancies between Detective Deshaies's and Officer Colon's and Officer Foote's testimony as to why they reentered the Defendant's residence and what happened after they reentered the residence. (*Id.* 3–6, 14–15.) In the Defendant's view, Detective Deshaies's illogical explanations for why he reentered the residence and why he failed to mention his reentry of the residence in the affidavit defy commonsense and are indicative of reckless, if not dishonest, behavior. Therefore, the Defendant argues that good faith exception should not apply in the instant case.

To succeed on his argument, the Defendant must show by a preponderance of the evidence that the search warrant affiant was reckless or dishonest in preparing the affidavit. As previously discussed, Officer Foote and Officer Colon responded to a security alarm at the

Defendant's residence. Exploring the perimeter of the house, the officers found that the side door had been forcibly opened. With the alarm sounding, the officers identified themselves, entered the residence, and conducted a protective sweep of the residence, resulting in the discovery of evidence of marijuana trafficking and two firearms in the basement of the residence. Officer Foote contacted Detective Deshaies and described the evidence of marijuana trafficking to Detective Deshaies. Upon his arrival, the security alarm continued to sound. The officers involved were uncertain whether the alarm had recycled or continued to sound without interruption. On the instruction of Detective Deshaies, the three officers reentered the residence to perform a second protective sweep to ensure that no one remained inside with access to the unsecured firearms. (Hr'g Tr. 17–18, 98–99.)[3] Detective Deshaies and Officer Foote entered the basement to secure the firearms on the coffee table and did not open any containers while there. (*Id.* 98–99.) Detective Deshaies testified that "we were simply in there to ensure that there were no persons in [the residence] and to ensure that those weapons were not accessible to someone while we were maintaining security outside the home." (*Id.*) After completing the sweep, Detective Deshaies instructed the officers to secure all entrances to the house while he applied for a search warrant. (*Id.* 99–100.) Prior to leaving the scene, Detective Deshaies gave the law enforcement officers present "explicit instructions" not to reenter the residence until he obtained a search warrant. (*Id.* 100.)

Detective Deshaies's affidavit recounted Officer Foote's description of the evidence of marijuana trafficking and firearm possession discovered during the first protective sweep of the residence. (Search Warrant Aff. 1–2.) At the evidentiary hearing, Detective Deshaies's conceded

---

[3]Officer Colon's testimony contradicted Officer Foote's and Detective Deshaies's testimony. According to Officer Colon, the three officers reentered the residence "to show . . . Detective Deshaies what we had found and smelled." (Hr'g Tr. 77–79.)

that he did not discuss his entry into the Defendant's residence upon his arrival to the scene in his affidavit. (Hr'g Tr. 130.) When asked to explain this omission, Detective Deshaies responded, "I didn't know that it would be significant to the facts within the case." (*Id.*)

To support his argument that Detective Deshaies was reckless or dishonest in preparing the affidavit, the Defendant offers an alternative account of why Detective Deshaies conducted a secondary sweep of the Defendant's residence and why Detective Deshaies failed to mention the secondary sweep in his affidavit submitted to the magistrate. According to the Defendant, Detective Deshaies did not reenter the Defendant's residence because he was concerned that the security alarm was still sounding and that a suspect could still be in the residence with the unsecured firearms in the basement. Rather, in the Defendant's version of events, Detective Deshaies ordered a secondary sweep of the Defendant's residence so that he could personally view the evidence of marijuana and firearms that Officer Foote described seeing in the basement. As to why Detective Deshaies omitted mention of the secondary sweep of the Defendant's residence in his affidavit, the Defendant dismisses Detective Deshaies's testimony that he did not believe that secondary search was relevant to the facts of the case. Instead, the Defendant contends that Detective Deshaies purposefully left out any discussion of the secondary search because of his concern that such a secondary search violated the Fourth Amendment's prohibition on warrantless searches.[4]

The Defendant's alternative account is not factually sufficient to establish by a

---

[4] In his initial Motion to Suppress, the main issue raised by the Defendant was whether the secondary search of the Defendant's residence violated his Fourth Amendment rights. After the evidentiary hearing, the Defendant disregarded this issue and instead focused on Detective Deshaies's alleged failure to comply with the Fourth Amendment's oath or affirmation requirement. (Def.'s Br. in Supp. 1 n.1.) Neither party has seriously briefed the issue of whether the secondary search of the Defendant's residence violated the Fourth Amendment and, therefore, the Court does not address it here.

preponderance of the evidence that Detective Deshaies was dishonest or reckless in preparing the search warrant affidavit. Without more, speculation and conjecture as to Detective Deshaies's intent in conducting the secondary sweep is insufficient to warrant relief on a motion to suppress. *See United States v. Ceballos*, 302 F.3d 679, 685 (7th Cir. 2002) (citing *United States v. Westmoreland*, 240 F.3d 618, 637 (7th Cir. 2001)) (conjecture contradicting sworn testimony and documentary evidence insufficient to warrant relief on motion to suppress); *United States v. Chaar*, 137 F.3d 359, 363 (6th Cir. 1998) ("we require more than mere conjecture to suppress evidence"); *United States v. Brown*, No. 10 CR 765–1, 2012 WL 914925, at *6 (N.D. Ill. Mar. 16, 2012) (Government's speculation as to a "series of events whereby the discovery of the drugs and gun could have been proper" under the Fourth Amendment was insufficient to meet evidentiary burden and prevent suppression of evidence); *United States v. Harvey*, No. 2:10 CR 42 PPS, 2010 WL 3219314, at *5 (N.D. Ind. Aug. 13, 2010) (Government's alternative explanation for defendant's working license plate lights "[was] conjecture, not evidence.")

At the evidentiary hearing, the Court had the opportunity to assess Detective Deshaies' credibility by observing his verbal and nonverbal behavior, reactions and responses to interrogatories, facial expressions, attitude, tone of voice, eye contact, posture and body movements. *See United States v. French*, 291 F.3d 945, 951 (7th Cir. 2002) (finding the district court is in the best position "to observe the verbal and nonverbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements, as well as confused or nervous speech patterns"). Detective Deshaies was forthright in his testimony throughout the hearing. He did not attempt to evade counsels' questions and admitted without hesitation that he was not orally sworn in prior to signing the affidavit. In explaining why he conducted a second

sweep of the residence, Detective Deshaies consistently testified that he was concerned for officer safety because the security alarm continued to sound and that he thought there was a risk a suspect could still be inside the residence which contained unsecured firearms. Similarly, when explaining why he failed to mention this secondary search in his affidavit, Detective Deshaies testified that he did not believe that search to be relevant to the facts of the case. From observing his testimony and behavior, the Court found Detective Deshaies testimony to be credible.

Ultimately, the Defendant does not challenge the factual accuracy of the contents of the affidavit. In the affidavit, as corroborated by Officer Foote's and Colon's testimony at the evidentiary hearing, Detective Deshaies accurately described the first search of the Defendant's residence and the discovery of evidence of marijuana trafficking and firearms therein. Consequently, the Court cannot conclude that Detective Deshaies was dishonest in his preparation of the affidavit. Moreover, the Court cannot find that Detective Deshaies was reckless for omitting details of the secondary search of the residence from the affidavit. Under the circumstances of this case, the Court cannot say that it was unreasonable for Detective Deshaies to omit information of the second sweep, which confirmed Officer Foote's and Colon's account of the first sweep but did not uncover new evidence relevant to the Allen County judge's probable cause determination. *Cf. United States v. Simmons*, 771 F. Supp. 2d 908, 927 (N.D. Ill. 2011) (omission of facts material to confidential informant's reliability warranted suppression of evidence because probable cause would have been lacking had the complaint included the omitted facts). Here, if the omitted account of the secondary search had been included in Detective Deshaies's affidavit, that account would have corroborated and strengthened the Allen County judge's finding of probable cause. Although the Defendant contends otherwise, the evidentiary record does not support a finding that Detective Deshaies was reckless or dishonest

in preparing the affidavit and he does not identify any case law to support his position.[5]

Therefore, the Court finds that the good faith exception applies and that suppression is not warranted in this case.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Defendant's Motion to Suppress [ECF No. 33]. A telephonic scheduling conference is SET before Judge Theresa L. Springmann on August 13, 2013, at 11:00 AM. The Court will initiate the call.

SO ORDERED on August 6, 2013.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

---

[5] To suppress evidence uncovered pursuant to an invalid warrant, a defendant must show that:

(1) courts have clearly held that a *materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand*; or (2) the affidavit is so plainly deficient that any reasonably well-trained officer "would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant."

*United States v. Koerth*, 312 F.3d 862, 869 (7th Cir. 2002) (emphasis added) (citing *Malley v. Briggs*, 475 U.S. 335, 345 (1986)).